

**ORDERED in the Southern District of Florida on August 6, 2018.**

Robert A. Mark, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| In re: | ) | Case No. 17-17829-BKC-RAM |
| | ) | |
| ROBERT ANTHONY ARTHUR and KALAIVANI ARTHUR, | ) ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| COOSEMANS MIAMI, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 17-01378-BKC-RAM-A |
| | ) | |
| ROBERT ANTHONY ARTHUR and KALAIVANI ARTHUR, | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND
ORDER GRANTING MOTION TO DISMISS**

Section 523(a)(4) of the Bankruptcy Code excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity." The Code does not define fiduciary capacity,

and the only clear consensus among courts interpreting § 523(a)(4) is that acting in a fiduciary capacity means something more than simply having fiduciary duties.

The Defendants are produce dealers with fiduciary duties under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499a, *et seq.* PACA creates a trust to protect produce suppliers like the Plaintiff. The issue before the Court is whether a PACA trust is the type of trust that gives rise to actionable fiduciary capacity under § 523(a)(4). Courts agree that only "technical trusts" fit the bill, but there is no consensus regarding what constitutes a "technical trust."

This is a close one. A PACA trust consists of identifiable assets, namely the agricultural commodities and proceeds from that sale. Moreover, the statute imposes duties on the dealer, including maintaining sufficient trust assets to satisfy the claims of the trust beneficiaries. Nevertheless, the Court concludes that a PACA trust does not satisfy the requirements for finding "fiduciary capacity" under § 523(a)(4).

After review of Eleventh Circuit authority and persuasive authority from other Circuit Courts of Appeals, the Court finds that a PACA trust falls short because (1) it does not require segregation of assets unless and until a court orders segregation

2

after a showing of dissipation; and (2) the trust assets may be used for non-trust purposes.   Therefore, the Defendants' motion to dismiss the Plaintiff's § 523(a)(4) complaint will be granted.

**Factual Background**

The Defendants in this proceeding, Robert Anthony Arthur and Kalaivani Arthur (the "Defendants"), owned and operated a limited liability company, Sunrise International, LLC ("Sunrise"), that purchased and sold wholesale produce under the trade name Sunrise Fresh Produce.   For purposes of ruling on the Defendants' Motion to Dismiss [DE #12], the Court accepts as true the Plaintiff's allegation that Sunrise "was at all times pertinent . . . a dealer subject to and licensed under the provisions of the PACA."

Prior to the filing of the Defendants' chapter 7 case, the Plaintiff sued Sunrise and the Defendants in district court alleging violations under PACA.   The parties entered into a Stipulation of Settlement and Order [DE# 1, pp. 40-46] in which Sunrise and the Defendants agreed to be jointly and severally liable to the Plaintiff in the amount of $298,048.27.   Plaintiff alleges that the unpaid balance is $280,581.02 plus attorney's fees and costs [DE# 1, ¶ 14].   At issue in this adversary proceeding is the dischargeability of that debt.

The Plaintiff argues that, as trustees of a PACA trust, the

Defendants defalcated while acting in a fiduciary capacity by causing Sunrise to default on payments due to the Plaintiff for the purchase of produce. More specifically, the Plaintiff argues its produce was the statutorily-protected corpus of a PACA trust. Once sold, the proceeds of that sale also became the corpus of a PACA trust, and under PACA, the Defendants had a duty to ensure that sufficient proceeds remained in the trust to satisfy in full the Plaintiff's invoices. Breach of this fiduciary duty, argues the Plaintiff, excepts the resulting debt from discharge under § 523(a)(4).

## **Procedural History**

The Defendants filed their chapter 7 petition on June 22, 2017. The Plaintiff filed its Complaint [DE #1] initiating this adversary proceeding on September 26, 2017. On November 16, 2017, the Defendants filed their Motion to Dismiss Complaint as Time Barred and for Failure to State a Claim Upon Which Relief Can Be Granted [DE #12] (the "Motion to Dismiss").

The Motion to Dismiss argues first that the Complaint filed on September 26, 2017, was untimely because September 25, 2017 was the deadline for filing complaints seeking to except debts from discharge [DE# 2 in Case No. 17-17829]. However, because of the wide-spread power outages in South Florida after Hurricane Irma,

this Bankruptcy Court entered General Order 2017-02, a copy of which is attached to the Plaintiff's Response [DE# 14-1], extending the otherwise applicable deadline to file the Complaint in this proceeding such that the Complaint was timely filed.  The Court conducted a hearing on January 18, 2018 to examine the balance of the Defendants' arguments for dismissal.

## Analysis

Statutory fiduciary duties are not *per se* equivalent to fiduciary capacity under bankruptcy law.  The meaning of "fiduciary capacity" in § 523(a)(4) is a question of federal law. *In re Talmo*, 175 B.R. 775 (Bankr. S.D. Fla. 1994).  The term is narrower than the general term fiduciary duty, and is not to be construed expansively, but instead, only in reference to technical trusts.  *Quaif v. Johnson*, 4 F.3d 950, 953 (11th Cir. 1993).  So, the question of whether a PACA trust gives rise to actionable fiduciary capacity under § 523(a)(4) depends on whether a PACA trust is a technical trust.

*The Eleventh Circuit has not defined technical trusts.*

The Eleventh Circuit identifies and distinguishes different types of trusts in *Quaif v. Johnson*, the Circuit's seminal decision on the issue of fiduciary capacity under § 523(a)(4).[1]  Although

---

1 *Quaif*'s distinction as the seminal authority in the Eleventh

5

the opinion acknowledges, and "[t]he Supreme Court has consistently held,"[2] that only debts subject of a technical trust are nondischargeable, the Eleventh Circuit does not define a technical trust in *Quaif*.

The Eleventh Circuit does, however, provide examples of trusts or statutory obligations that are not technical trusts. A technical trust is not a trust created involuntarily, by operation of law, to right a wrong, like resulting or constructive trusts. *Quaif* at 953. The former redress unintended consequences of a transfer, and the latter arise from wrongdoing (i.e. *ex maleficio*). *Trust*, <u>Black's Law Dictionary</u> (10th ed. 2014). Instead, a "technical" trust is more akin to a trust created by voluntary

---

Circuit on fiduciary capacity under § 523(a)(4) was in force at the time of the Debtors' bankruptcy filing and continues in force to this day. *See, e.g., Jackson v. Jackson (In re Jackson)*, Nos. 17-10536, 17-11341, 17-11936, 2018 WL 1791991, at *4 (citing *Quaif* for the proposition that the debtor-defendant "was not a 'fiduciary' within the meaning of § 523(a)(4), because that rule refers only to 'technical,' not constructive, trusts"); *Aamodt v. Narcisi (In re Narcisi)*, 691 Fed. Appx. 606, 611 (11th Cir. 2017) (citing *Quaif* for an analysis of whether Pennsylvania law creates fiduciary capacity actionable under § 523(a)(4)); *Guerra v. Fernandez-Rocha (In re Fernandez-Rocha)*, 451 F.3d 813, 816-817 (11th Cir. 2006) (citing *Quaif* for the "general § 523(a)(4) principles" applicable to the case; *Palloto v. Neri (In re Neri)*, Adv. Pro. No. 17-5125-BEM, 2018 WL 333819, at *6 (Bankr. N.D. Ga. Jan. 8, 2018) (citing *Quaif* for the court's § 523(a)(4) analysis).
2 *Quaif v. Johnson,* 4 F.3d 950, 953 (11th Cir. 1993) (citing *Chapman v. Forsyth,* 43 U.S. 202 (1844); *Upshur v. Briscoe,* 138 U.S. 365 (1891); and *Davis v. Aetna Acceptance Co.,* 293 U.S. 328 (1934)).

agreement, i.e. an "express" trust. *Quaif* at 953.

Statutory trusts fall in the middle.  They are not *per se* technical trusts.  To determine whether a statutory trust is more analogous to an express trust than it is to a resulting or a constructive trust, the obligations imposed by the statute must be analyzed.  *General Produce Inc. v. Tucker* (*In re Tucker*), 2007 WL 1100482 at *2 (Bankr. M.D. Ga. April 10, 2007) (*compare Quaif*, 4 F.3d at 954, finding that a Georgia insurance statute created a technical trust, *with Guerra v. Fernandez-Rocha* (*In re Fernandez-Rocha*) 451 F.3d 813 (11th Cir. 2006), finding that the Florida statute requiring doctors to maintain assets sufficient to pay medical malpractice claims did not create a technical trust).

*Like Eleventh Circuit precedent, the plain language of section 523(a)(4) mandates a finding that sufficient fiduciary duties must be imposed prior to, and independent of, any defalcation.*

The language of § 523(a)(4) is clear – only debts incurred while acting in a fiduciary capacity are nondischargeable.  It logically follows that the hallmarks of a technical trust relationship must exist prior to any alleged defalcation for a trust to be considered a technical trust.

Applying this standard, the Court concludes that a PACA trust

is not a technical trust until a court imposes additional duties and restrictions after a prior showing of malfeasance. This view is strongly supported by the Eleventh Circuit's decision in *Frio Ice, S.A. v. Sunfruit, Inc.,* 918 F.2d 154 (11th Cir. 1990).

In *Frio Ice*, the Eleventh Circuit examined the plain language of PACA and its legislative history, and established a rule indicating that a PACA trust is a trust *ex maleficio*. The rule is as follows:

> Upon a showing that the trust is being dissipated or threatened with dissipation, a district court should require the PACA debtor to escrow its proceeds from produce sales, identify its receivables, and inventory its assets. It should then require the PACA debtor to separate and maintain these produce-related assets as the PACA trust for the benefit of all unpaid sellers having a bona fide claim. Each beneficiary would then be entitled to its pro rata share.

*Frio Ice* at 159 (internal citation omitted).

As discussed earlier, *Quaif* found that resulting and constructive trusts are not "technical" trusts. The opinion described the category of resulting and constructive trusts as trusts that are "created *ex post* as a remedial measure to right a wrong." *Quaif* at 954. The Eleventh Circuit's *Frio Ice* ruling fits squarely within that framework.

At the inception of a PACA trust, a PACA dealer does owe trust beneficiaries a number of fiduciary duties that exist pre-

defalcation.  A PACA dealer must keep organized books and records, 7 U.S.C. § 499(i), 7 C.F.R. §§ 46.9(g), 46.15, and must be licensed, 7 C.F.R. § 46.3.  Most importantly, a PACA dealer must maintain sufficient trust assets to satisfy the claims of trust beneficiaries, 7 C.F.R. § 46.46(d)(1).  However, this last and most critical obligation is meaningless without mandated segregation.

In *Frio Ice*, the Eleventh Circuit explained that "[s]egregation often may be the only means by which a federal court can prevent dissipation." *Frio Ice* at 159 (emphasis added). However, the Eleventh Circuit also recognized that Congress allowed for PACA trusts to be nonsegregated, floating trusts because "Congress sought to minimize the burden of the PACA trust on produce dealers." *Id.*  Even though PACA's central purpose "is to ensure payment to trust beneficiaries," the Eleventh Circuit concluded that district courts cannot require a PACA debtor "to separate and maintain . . . the PACA trust for the benefit of all unpaid sellers" prior to a showing of dissipation.  *Frio Ice* at 159.

Thus, although pre-defalcation, there is a duty to maintain sufficient trust assets to pay sellers, there is no meaningful enforcement of that duty until there is proof of dissipation and

9

a court orders the segregation of trust assets. As such, the
attributes of a PACA trust are akin to a constructive trust and
therefore do not satisfy the *Quaif* standard for a technical trust.

### *A technical trust must have segregated trust assets.*

Interpreting state statutory trusts, the Eleventh Circuit has
held that segregation of assets is a hallmark of the type of trust
relationship that would establish fiduciary capacity under
§ 523(a)(4). *Quaif* at 954. In discussing the fiduciary duties
sufficient to create a technical trust, *Quaif* also cited two Fifth
Circuit decisions that were decided under the Bankruptcy Act and
are binding on the Eleventh Circuit under *Bonner v. Prichard*.[3]
*Murphy & Robinson Investment Company v. Cross (In re Cross)*, 666
F.2d 873 (5th Cir. 1982); *Angelle v. Reed (In re Angelle)*, 610
F.2d 1335 (5th Cir. 1980).

Turning first to the binding Fifth Circuit decisions, both
*Cross* and *Angelle* involved state statutes governing contractors in
the construction industry. In *Cross*, the court found that the
debts of general contractors are dischargeable because general

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209-1211 (11th
Cir. 1981), the Eleventh Circuit adopted as binding precedent all
decisions issued by the former Fifth Circuit in cases that were
"submitted for decision" prior to October 1, 1981.

contractors "are under no obligation to maintain a segregated account" and owe no fiduciary duty "prior to and independent of . . . alleged misconduct." *Cross* at 881.

In *Angelle*, the court found that the builder owed no fiduciary duty because the statute at issue did not create a trust prior to any alleged misappropriation. *Angelle* at 1341. Although the *Angelle* court did not expressly hold that segregation was required, the court expressed its "doubts . . . that a statute which merely makes misappropriation of funds a crime without, for example, requiring segregation of accounts would be enough to charge the parties with an intent to create a trust." *Id.* at 1340.

In *Quaif*, the Eleventh Circuit did focus on the segregation of trust assets. The statutory trust in question was a Georgia statute creating a trust on the receipts of insurance agents for the benefit of insurers. 4 F.3d 950 (11th Cir. 1993) (interpreting O.C.G.A. § 33-23-79). The Eleventh Circuit concluded that the insurance agent in *Quaif* was acting in a fiduciary capacity because the Georgia statute (i) required the agent "to promptly account for and remit payments of funds to the insurer," and (ii) forbid the agent "from commingling the funds with his operating or personal accounts." *Id.* at 954.

The *Quaif* court rejected the debtor's argument that an agent

11

is not acting in a fiduciary capacity because the agent does not
have to maintain separate, segregated accounts for each insurer to
whom the agent owes premiums. *Id.*  However, in finding the agent
to have been acting in a fiduciary capacity pre-defalcation, the
court focused on the duty of the agent to segregate trust assets,
namely, the insurance premiums, from non-trust assets.  The court
explained as follows:

> The Georgia statute requires that the <u>premiums must be
> separate from other types of funds</u>, but may be kept in
> a common premium account as long as there were adequate
> records of the sources of these funds.  <u>The court finds
> that this is sufficient "segregation" to satisfy the
> requirement that the fiduciary duties be created prior
> to the act of defalcation.</u>

*Id.* (internal citations omitted) (emphasis added).

Unlike the statutory trust at issue in *Quaif*, PACA does not
require the segregation of trust assets prior to a defalcation.
Rather, PACA trust assets may be commingled. 7 C.F.R. § 46.46(b)
("Trust assets are to be preserved as a nonsegregated 'floating'
trust.  Commingling of trust assets is contemplated.").  Moreover,
federal courts interpreting PACA have read the statute and its
concomitant regulations to mean that no segregation is required.
*See, e.g., In re Cherry Growers, Inc.,* 576 B.R. 569, 576 (Bankr.
W.D. Mich. 2017) ("PACA and the associated regulations expressly
contemplate commingling of trust and non-trust property."); *Frio*

12

*Ice* at 159.   This Court concludes that the authority of PACA dealers to comingle trust assets with other assets precludes a finding that a PACA trust is a technical trust.

Not all courts agree that *Quaif* mandates segregation. *See General Produce, Inc. v. Tucker (In re Tucker)*, Adv. Pro. No. 06-5107, 2007 WL 1100482, at *4 (Bankr. M.D. Ga. April 10, 2007) (finding segregation is not required so long as the trust *res* is identifiable and discussing cases with similar holdings). However, some lower courts in the Eleventh Circuit independently have held that segregation is a mandatory element of a technical trust.

Several bankruptcy court opinions from the Middle District of Florida refer to a three-part test for determining the existence of a technical trust, and segregation is one of the three essential elements. *See, e.g., Cardile Bros. Mushroom Pkg, Inc. v. McCue (In re McCue)*, 324 B.R. 389, 392-93 (Bankr. M.D. Fla. 2005) (citing *American Surety & Casualty Co. v. Hutchinson (In re Hutchinson)*, 193 B.R. 61, 65 (Bankr. M.D. Fla. 1996) for the three-part test, and holding that a PACA trust is not a technical trust because trust assets can be comingled); *Cladakis v. Triggiano (In re Triggiano)*, 132 B.R. 486, 490 (Bankr. M.D. Fla. 1991) (adopting the same three-part test).   Moreover, in an unpublished decision,

the Eleventh Circuit affirmed a district court opinion from the Southern District of Florida that adopts the same three-part test. *Donald Hanft, M.D., P.A. v. Church (In re Donald Hanft, M.D., P.A.)*, 315 B.R. 617, 623 (S.D. Fla. 2002) ("For a technical trust to exist, three elements must be present: (1) a **segregated** trust *res*; (2) an identifiable beneficiary; and (3) affirmative trust duties established by contract or statute." (emphasis added) (citing *In re Hutchinson*, 193 B.R. 61, 65 (Bankr. M.D. Fla. 1996)), *aff'd sub nom. Hanft. V. Church*, 73 F. App'x 387 (11th Cir. 2003).

Although the Eleventh Circuit did not expressly adopt a segregation requirement in *Quaif*, it repeatedly has described a segregation requirement as clear indicia of a technical trust relationship.  That requirement is of critical importance in the context of this case, where (i) a statute is enacted specifically to prevent dissipation of assets and (ii) segregation may be the only way to accomplish that statutory purpose.  Therefore, this Court finds that segregation of trust assets is a necessary element.

### *A technical trust must restrict the use of trust assets.*

In addition to not having the obligation to segregate trust assets from non-trust assets, a PACA dealer has the right to use PACA trust assets for other purposes, not just to pay the

14

agricultural commodity sellers.  There is no prohibited use of PACA trust assets; they may not be dissipated, but they can be used for practically any purpose.  In fact, the Department of Agriculture expressly contemplated and authorized use of trust assets "to pay other creditors" when the Code of Federal Regulations was amended to implement PACA. AMS *Regulations Under the Perishable Agricultural Commodities Act; Addition of Provisions To Effect a Statutory Trust*, 49 FR 45735-01, 45738 (U.S.D.A. 1984) (to be codified at 7 CFR Part 46).

Courts have held, and this Court agrees, that the right to use trust assets for non-trust purposes is fatal to finding that a technical trust exists. *See Texas Lottery Commission v. Tran (In re Tran)*, 151 F.3d 339, 343-44 (5th Cir. 1998) (identifying "the duty that a trustee refrain from spending trust funds for non-trust purposes" as a core duty in a fiduciary relationship).  Thus, the fact that PACA allows dealers to use trust funds for non-trust purposes is another reason for this Court's conclusion that a PACA trust is not a technical trust in which the dealer is acting in a fiduciary capacity under § 523(a)(4).

*Contrary authority is not persuasive when examined against the backdrop of the Eleventh Circuit's Quaif and Frio Ice opinions.*

Some Circuit Courts of Appeal do not explicitly require a finding that trust assets must be segregated and used only for trust purposes. *See, e.g., Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 391-92 (6th Cir. 2005) ("Four requirements are necessary to establish the existence of an express or technical trust: (1) an intent to create a trust; (2) a trustee; (3) a trust *res*; and (4) a definite beneficiary" (citation omitted)); *Woodworking Enterprises, Inc. v. Baird (In re Baird)*, 114 B.R. 198, 203-04 (9th Cir. BAP 1990) (construction fund statute prohibiting the diversion or use of trust funds for any purpose other than the payment of trust beneficiaries qualifies as an express or technical trust even though no segregation of funds is required).  However, for the reasons discussed above, this Court concludes that mandated segregation of trust assets and a prohibition on the use of trust assets for non-trust purposes are necessary elements of a technical trust in the Eleventh Circuit.

This Court also recognizes that a majority of courts specifically addressing the issue of whether PACA trusts are technical trusts have held that PACA trusts are technical trusts. Those courts often cite the following three factors in support of their decision: (i) a PACA trust *res* is identifiable, (ii) a PACA trustee risks personal liability for failure to maintain in the

PACA trust sufficient trust assets to satisfy the claims of PACA trust beneficiaries, and (iii) a PACA trust is created upon receipt of perishable agricultural commodities without regard to malfeasance. *See, e.g., N.P. Deoudes, Inc. v. Snyder (In re Snyder)*, 184 B.R. 473, 475 (D. Md. 1995); *General Produce, Inc. v. Tucker (In re Tucker)*, Adv. Pro. No. 06-5107, 2007 WL 1100482, at *5 (Bankr. M.D. Ga. April 10, 2007); *see also E. Armata, Inc. v. Parra (In re Parra)*, 412 B.R. 99, 104-05 (Bankr. E.D.N.Y. 2009) (collecting contrary authority).  Each of these factors is discussed below.

<u>*An identifiable trust res is insufficient.*</u>

Some courts have held that a PACA trust is a technical trust because trust assets are "specifically identified and identifiable as all perishable agricultural commodities and products and proceeds of such commodities." *General Produce, Inc. v. Tucker (In re Tucker)*, Adv. Pro. No. 06-5107, 2007 WL 1100482, at *5 (Bankr. M.D. Ga. April 10, 2007) (citing 7 C.F.R. Pt. 46.46(b)); *N.P. Deoudes, Inc. v. Snyder (In re Snyder)*, 184 B.R. 473, 475 (D. Md. 1995) (citing 7 U.S.C. § 499e(c)(2)).  Those Courts reason that a trust *res* must merely be separately identified, as opposed to actually segregated, for a trust to qualify as a technical trust. *Id*. at *4 (collecting cases).

17

This Court finds that an identified trust *res* without a segregation requirement is not enough.  In *Frio Ice*, the Eleventh Circuit said the only effective bar to dissipation is actual segregation, not separate identification. *Frio Ice* at 159. Moreover, the Eleventh Circuit interpreted PACA as requiring neither separate identification nor actual segregation until <u>after</u> an alleged defalcation.  *See Frio Ice* at 159 (upon a showing of dissipation, a PACA debtor should be required "to escrow its proceeds from produce sales, identify its receivables, and inventory its assets," and "separate and maintain" its "produce-related assets").  Thus, even though PACA describes an identifiable trust *res*, a PACA trust bears a greater resemblance to a resulting or a constructive trust than it does to a technical trust.

*Toothless enforcement of a pre-defalcation duty to maintain sufficient trust assets does not satisfy the stringent standards of fiduciary capacity.*

Cases holding that a PACA trust is a technical trust often focus on a PACA dealer's duty to "maintain trust assets in a manner so that the trust assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities," 7 C.F.R. § 46.46(d)(1).  However, as described

18

earlier, that obligation cannot be meaningfully enforced without mandated segregation. *Frio Ice* at 159.

Without a doubt, Congress enacted PACA to protect farmers. However, Congress also valued the interests of produce dealers, and the regulations ultimately adopted are flexible to avoid unduly burdening produce dealers. *Frio Ice* at 159. The Eleventh Circuit adopted a defalcation prerequisite to segregation specifically to honor the countervailing interest of PACA dealers like the Defendants in this case. *Frio Ice* at 159, n.8. Deference to the countervailing interest of a trustee is beyond the stricter confines of fiduciary capacity. To qualify as a technical trust, protection of the trust beneficiary should be paramount.

*The fact that a PACA trust exists independent of malfeasance does not qualify a PACA trust as a technical trust.*

This last factor discussed by cases finding that a PACA trust is a technical trust is, like the two previously discussed, a trust hallmark in name only. While it is true that PACA expressly states that a PACA trust is born upon receipt of perishable agricultural commodities,[4] it does not follow that the statutory PACA trust is,

---

4 *See, e.g., General Produce, Inc. v. Tucker (In re Tucker)*, Adv. Pro. No. 06-5107, 2007 WL 1100482, at *5 (Bankr. M.D. Ga. April 10, 2007) ("[T]he trust arises upon the trustee's receipt of perishable agricultural commodities, which occurs when the trustee 'gains ownership, control, or possession' of the goods." (quoting

at its inception, a technical trust. There are no material restraints on a PACA trustee's keeping or use of trust assets pre-defalcation. Rather than managing trust receipts exclusively for the benefit of farmers, PACA dealers expressly are authorized to use trust receipts for their own account.

Two statutory-trust cases involving debtors who sold lottery tickets, *Texas Lottery Commission v. Tran (In re Tran)*, 151 F.3d 339 (5th Cir. 1998) and *Matter of Marchiando*, 13 F.3d 1111 (7th Cir. 1994), illustrate the point. In *Tran*, the Texas statute mandated that all proceeds from lottery-ticket sales "be held in trust for the benefit of the state." *Tran* at 341 (quoting the Texas Lottery Act). However, the statute did not require that the debtor segregate lottery ticket proceeds, nor did it prohibit the use of lottery ticket earnings for non-lottery purposes. *Id*. The Court held that Tran's debt was dischargeable under section 523(a)(4) because the Texas statute did not impose the core duties necessary to establish fiduciary capacity, namely prohibiting spending trust funds for non-trust purposes, mandating segregation of trust funds, and giving the trustee some independent discretion to manage the beneficiary's trust funds. *Id.* at 344-46.

---

7 C.F.R. Pt. 46.46(a)(1)); *N.P. Deoudes, Inc. v. Snyder (In re Snyder)*, 184 B.R. 473, 475 (D. Md. 1995) (citing 7 U.S.C. § 499e(c)(2) and collecting cases).

In *Marchiando*, Chief Judge Posner writing for the court determined that an Illinois lottery-ticket law that declared the proceeds of lottery ticket sales a "trust fund," mandated segregation of the proceeds, and penalized violations as a felony, did not create a technical trust.  He described the statutory trust before him as follows:

> The intermediate case, but closer we think to the constructive or resulting trust pole, is that of a trust that has a purely nominal existence until the wrong is committed.  Technically, Marchiando became a trustee as soon as she received her license to sell lottery tickets.  Realistically, the trust did not begin until she failed to remit ticket receipts.

*Marchiando* at 1116.  The case at bar is one of those intermediate cases.

## Conclusion

A PACA trust identifies trust assets and imposes duties on produce dealers like the Defendants in this proceeding.  Nevertheless, the Defendants were not acting in a fiduciary capacity at the time of their alleged defalcation.  The Defendants were not required to segregate trust assets from non-trust assets and could use trust assets for their own purposes.  For these reasons, a PACA trust is not a technical trust, and the Defendants' debt to the Plaintiff cannot be excepted from discharge under § 523(a)(4) of the Bankruptcy Code.

21

As a result, it is –

**ORDERED** as follows:

1.    The Defendants' Motion to Dismiss is granted.

2.    The Complaint is dismissed with prejudice.

3.    Because this Court's opinion relies heavily on its interpretation of Eleventh Circuit authority, and other courts have read the Circuit's decisions differently, upon request, this Court will certify this Order for direct appeal pursuant to 28 U.S.C. § 158(d) and Fed. R. Bankr. P. 8006(d).

###

Copies Furnished To:

Robert F. Reynolds, Esq.
Attorney for Defendants
Slatkin & Reynolds, P.A.
One East Broward Boulevard, Suite 609
Fort Lauderdale, Florida 33301

Peter D. Spindel, Esq.
Attorney for Plaintiff
Peter Spindel, Esq., PA
P.O. Box 166245
Miami, Florida 33116-6245